IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| STEPHEN R. MAYES, #537428, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:23-cv-00067 |
| | ) |
| DR. KENNETH WILLIAMS, M.D., | ) JUDGE CAMPBELL |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2) filed by Stephen Mayes, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee. The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. APPLICATION TO PROCEED IFP

Prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee," but that payment may be made in installments over time via an assessment against the prisoner's inmate trust account, rather than in a lump sum at the time of filing, if the prisoner is granted IFP status. 28 U.S.C. § 1915(b)(1)–(2). However, a prisoner may not file a civil action IFP in district court if he has, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.* § 1915(g). Plaintiff has previously filed three such actions in this Court. *See Mayes v. Banks*, No. 1:19-cv-00001, Doc.

Nos. 9–10 (M.D. Tenn. Feb. 7, 2019); *Dulworth, et al. v. Lindamood*, No. 1:18-cv-00036, Doc. Nos. 20–22 (M.D. Tenn. Sept. 18, 2018); *Mayes v. Sehorn, et al.*, No. 3:17-cv-01326, Doc. Nos. 10–11 (M.D. Tenn. Nov. 22, 2017). In light of these prior dismissals, Plaintiff is a "three-striker" who may only proceed as a pauper in this action if he is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To fall within this statutory exception, the danger Plaintiff is facing must be a "real and proximate" threat of serious physical injury that existed at the time the Complaint was filed. *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (citing, *e.g.*, *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). This standard requires that Plaintiff "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger"—not a past danger—when he filed the Complaint. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation marks and citations omitted). In determining whether the standard is met, the Court must construe the Complaint liberally, as "the imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Id.* Still, Plaintiff's allegations "must not be irrational, incredible, or speculative, and must describe with sufficient detail why [he] is in imminent danger." *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (citing *Vandiver*, 727 F.3d at 585).

Plaintiff sues the Tennessee Department of Correction (TDOC) Medical Director, Dr. Kenneth Williams, alleging that Dr. Williams "did nothing" in the wake of Plaintiff's 2018 heart attack to address his need for adequate cardiac health care, despite being informed in a letter dated October 16, 2021,[1] of the inadequacy of Plaintiff's treatment at SCCF and of his desire to transfer

---

[1] This letter, attached as an exhibit to the Complaint, references an "initial letter" to Dr. Williams in which Plaintiff requested transfer from SCCF, but otherwise appears to be the beginning of Plaintiff's

2

Case 1:23-cv-00067    Document 4    Filed 11/02/23    Page 2 of 10 PageID #: 41

to DeBerry Special Needs Facility (DSNF). (Doc. No. 1-1 at 2.) In addition to this letter directed to Dr. Williams in 2021 (*id.* at 6–8), Plaintiff mailed numerous other letters to TDOC between July 2022 and July 2023, "complaining about the lack of care issue" and requesting transfer from SCCF. (*Id.* at 2.) TDOC personnel responded to these other letters by stating that they had been forwarded to "our medical team" or "appropriate parties within TDOC" or "the TDOC prison operations team" for review (*id.* at 9–13), but Plaintiff was not transferred or provided with the particular medical care he desired.

Plaintiff was eventually diagnosed with calciphylaxis[2] after CT scans showed extensive calcification of the coronary arteries. (*Id.* at 3.) On August 29, 2023, cardiac catheterization was performed by Dr. John Baker at Jackson-Madison County General Hospital. (*Id.*) Plaintiff describes this procedure, its poor result, and Defendant's claimed culpability as follows:

> Shortly after advancing the catheter into my heart and injecting the dye, Dr. Baker removed the catheter and I asked him if there was blockage and he said your heart is in pretty bad shape. Dr. Baker informed me that all of my stents were completely blocked and they could not be re-stented. I asked if bypass surgery was an option and he told me that in his opinion it would not be possible. . . . Dr. Williams was adequately advised numerous times about the inadequate care I was being provided, he possessed [relevant] medical records to corroborate the claims I was making, and he had the ability to act in a way that would have made a difference. . . . Dr. Williams had a duty to act concerning the inadequate treatment and he failed to do so [and] now I have a permanently damaged heart. He could have moved me and chose not to which is cruel and unusual punishment. Now I am paying the price for it. . . .

---

efforts to present his case to Dr. Williams. (Doc. No. 1-1 at 6–7.) In the October 2021 letter, Plaintiff summarizes his treatment at SCCF and outside clinics/hospitals since 2018 and refers to his pending lawsuit against the SCCF physician, Dr. Elaine Rodela. Plaintiff's lawsuit against Dr. Rodela, in which he claims deliberate indifference to his serious medical needs at SCCF in 2020–2021, remains pending. *See Mayes v. Rodela*, No. 1:20-cv-00057 (M.D. Tenn.).

[2]   "Calciphylaxis, also known as calcific uremic arteriolopathy, is a rare but potentially devastating condition most often observed in patients with end-stage renal disease, although it does occasionally develop in patients without renal failure. It is characterized by cutaneous arteriolar calcification and subsequent tissue ischemia and infarction and causes painful skin lesions. Calciphylaxis is associated with substantial morbidity due to severe pain, non-healing wounds, and frequent hospitalizations. It is a highly fatal condition with 1-year mortality rates greater than 50 percent, most frequently due to sepsis." https://www.ncbi.nlm.nih.gov/books/NBK519020/ (last visited Oct. 30, 2023).

(*Id.*)

"[A] plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." *Vandiver*, 727 F.3d at 587; *see Vandiver v. Vasbinder*, 416 F. App'x 560, 562–63 (6th Cir. 2011) (citing *Ibrahim v. Dist. of Columbia,* 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger'")). In this case, although Plaintiff's chronic and likely terminal illness is being evaluated and treated, the Court nonetheless finds that he has adequately alleged imminent danger of serious physical injury and is thus eligible to proceed IFP in this matter.

Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee[3] is **ASSESSED**.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

---

3    While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

4

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal suit against any person

5

who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Analysis**

Plaintiff asserts that his Eighth Amendment rights were violated when he received "completely inadequate medical care since arriving at [SCCF] in February 2018, which has led to irreparable damage to [his] heart." (Doc. No. 1 at 3; Doc. No. 1-1 at 2.) "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). Plaintiff sues Defendant Williams in his individual capacity (Doc. No. 1 at 2), seeking to hold him personally liable for damages. (Doc. No. 1-1 at 4.)

Taking as true Plaintiff's factual allegations (recounted above in determining his eligibility for pauper status), it is clear that his claim is not based on any action taken by Defendant, but on Defendant's failure to act. Plaintiff alleges that Defendant failed to approve Plaintiff's request for transfer to DSNF after Plaintiff sent him a letter informing him of the poor medical care provided at SCCF and Plaintiff's dire medical condition. He claims that, although Defendant was not personally involved in his constitutionally inadequate medical care, Defendant "has received more than enough proof that the deliberate indifference existed"—including the indifference claimed in Plaintiff's pending case against the SCCF physician, Dr. Rodela, which Plaintiff refers to here as

6

the primary cause of the harm alleged in this case. (Doc. No. 1-1 at 2.) Plaintiff states that he "specifically wrote [Defendant] a detailed record of [Plaintiff's] hospitalization from December 30, 2020 through January 5, 2021," when he was under Dr. Rodela's care, and that Defendant "did nothing." (*Id.* at 3.) He asserts that Defendant, as TDOC Medical Director, "is ultimately responsible for each inmate[']s medical care while in custody of TDOC," had a duty and "the ability to act in a way that would have made a difference" in Plaintiff's case, and failed to fulfill this responsibility and duty. (*Id.* at 2–3.)

To the extent that Plaintiff is claiming Defendant's liability as Dr. Rodela's supervisor, based on the insufficient care provided by Dr. Rodela at any time prior to October 2021 (*see* Doc. No. 1-1 at 3, 7), he fails to assert a plausible claim to relief. "As relevant here, a supervisor may be liable if he or she 'abandons the specific duties of his [or her] position in the face of actual knowledge of a breakdown in the proper workings of the department'" under supervision. *Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022), *cert. denied sub nom. Chrisman v. Est. of Zakora*, 143 S. Ct. 2608 (2023) (quoting *Winkler v. Madison County*, 893 F.3d 877, 898 (6th Cir. 2018)). "The supervisor must have abdicated his or her job responsibility, and the 'active performance of the [supervisor's] individual job function' must have directly resulted in the constitutional injury." *Id.* (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)). "This means that, 'at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [subordinate].'" *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)).

Here, Plaintiff fails to allege that Defendant had actual, contemporaneous knowledge of the allegedly inadequate care provided by Dr. Rodela and others at SCCF between February 2018 and October 2021, when Plaintiff's letter detailing that care was sent. Without such knowledge,

7

Defendant could not, in the "active performance of [his] individual job function," have rendered supervision that "at least implicitly authorized, approved, or knowingly acquiesced in" Dr. Rodela's mistreatment of Plaintiff's medical conditions. Even if Defendant were alleged to have had a general awareness that Plaintiff "wanted more treatment than the medical staff [at SCCF] was providing" during that time, "[f]ailure to act in such a situation does not deliberate indifference make." *Mitchell v. Hininger*, 553 F. App'x 602, 607–08 (6th Cir. 2014). In any event, no claim based on Defendant's supervision in 2021 or before would be timely asserted in this suit filed on September 28, 2023. *See, e.g., Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021) (applying Tennessee's one-year statute of limitations for personal injury and federal civil rights claims to find § 1983 claim untimely).[4]

As to Defendant's supervision of Plaintiff's care providers after October 2021, when his calciphylaxis and inoperable heart condition were apparently confirmed, the Complaint merely asserts that Plaintiff is "[n]ow . . . paying the price" for past deliberate indifference to his serious medical needs, rather than that he continues to receive constitutionally inadequate care. (Doc. No. 1-1 at 3.) While the Complaint alleges that the events on which it is based occurred from "September 28, 2018 through present day" (Doc. No. 1 at 5), it says nothing of Plaintiff's more recent medical treatment, other than to confirm that he received significant testing at outside facilities (including "CT Scans at Hardin Medical Center and Maury Regional Medical Center"

---

[4] Although the statute of limitations is an affirmative defense that typically does not result in a pre-answer dismissal, when "the allegations in the complaint affirmatively show that the claim is time-barred," it is appropriate to dismiss for failure to state a claim on that basis. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]")). *See also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding "that the district court [on initial review under the PLRA] properly dismissed as frivolous Plaintiff's claims arising out of his incarceration at HCCF inasmuch as any such claim is barred by the applicable statute of limitations") (citing Tenn. Code Ann. § 28-3-104(a)(3)).

and "heart catheterization . . . at Jackson-Madison County General Hospital") secondary to clinical findings of "sores on [his] lower right leg [and] excruciating pain upon touch." (Doc. No. 1-1 at 3.) Plaintiff does not allege that SCCF providers were deliberately indifferent to his pain or other symptoms at any time in 2022 or 2023, much less that Defendant endorsed any such inadequate treatment. "A prisoner's difference of opinion regarding treatment . . . does not rise to the level of an Eighth Amendment violation. Moreover, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess prison officials' medical judgments and constitutionalize claims which sound in state tort law." *Cole v. Tennessee Dep't of Correction*, No. 3:08-cv-00264, 2008 WL 723516, at *3 (M.D. Tenn. Mar. 14, 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976), and *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Meanwhile, the Complaint's exhibits, which include Plaintiff's letter to Defendant and several pieces of return correspondence from TDOC, merely establish that Plaintiff continued to be dissatisfied with his medical care and to request transfer to DSNF in 2022 and 2023. (*Id.* at 9–13.) There are no allegations in the Complaint or its exhibits from which the Court could reasonably infer that, within the limitations period, Defendant knew of constitutionally inadequate care by SCCF medical providers yet failed to take corrective action he was duty-bound to take, thereby acquiescing in the violation. *Zakora*, 44 F.4th at 475. Nor is the denial of Plaintiff's transfer requests alone sufficient to support a plausible claim of deliberate indifference to serious medical needs. *See Jones v. Benitez*, No. 15-2082-JDT-DKV, 2015 WL 3892208, at *7 (W.D. Tenn. June 24, 2015) ("That Defendant changed Plaintiff's medication, failed to refer him to a specialist and declined to recommend that he be transferred to the DSNF does not establish deliberate indifference. At most, Defendant may have been negligent."); *see also Cole*, 2008 WL 723516, at

9

*4 (finding that "the law is well established that prisoners do not have a right to choose their prison," so transfer to prison farther away from current care providers does not support a constitutional claim) (citing, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

In sum, Plaintiff fails to state a plausible claim against Defendant Williams. This case will therefore be dismissed.

### III. CONCLUSION

For the above reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE